**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **TWO BOBCATS, INC. and ANDREW COOK** | § | |
| | § | Civil Action No. 2:25-cv-00346 |
| ***Appellants.*** | § | |
| | § | (On appeal from Bankr. Case No. 24-20119; Adv. No. 25-02001) |
| **v.** | § | |
| **CLINT MATTHEW WALLACE and SARAH S. WALLACE,** | § | |
| ***Appellees.*** | § | |

**APPELLANTS' OPENING BRIEF**

## RULE 8012 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012(a), Appellant Two Bobcats, Inc. states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

I. JURISDICTIONAL STATEMENT .......... 1

II. STATEMENT OF ISSUES PRESENTED AND STANDARDS OF REVIEW .......... 1

III. STATEMENT OF THE CASE .......... 3

A. The Underlying Bankruptcy Case and the Parties' Prepetition Dispute .......... 3

B. The Post-Discharge Communications and Arbitration Demand .......... 4

C. The Adversary Proceeding and Liability Ruling .......... 5

D. The Damages Proceedings, Post-Trial Briefing, and Final Judgment .......... 6

E. Post-Judgment Motions and Appeal .......... 7

IV. SUMMARY OF ARGUMENT .......... 7

V. ARGUMENT .......... 9

A. The Bankruptcy Court Applied the Wrong Legal Standard Under Taggart, So the Contempt Ruling Must Be Vacated .......... 9

1. Taggart Supplies the Governing Standard .......... 9

2. The Bankruptcy Court Recited Taggart but Functionally Reverted to a Notice-Plus-Intent Test .......... 10

3. At a Minimum, a Fair Ground of Doubt Existed as to Whether the Discharge Injunction Barred Appellants' Conduct .......... 13

4. The Bankruptcy Court Improperly Faulted Appellants for Not First Seeking a Dischargeability Determination .......... 15

B. Partial Summary Judgment on Liability Was Improper Because the Record Contained Genuine Disputes of Material Fact .......... 16

C. The Judgment Against Mr. Cook Cannot Stand Because the Record Did Not Establish, as a Matter of Law, That He Personally Asserted or Sought to Collect a Discharged Debt in His Individual Capacity .......... 19

D. The Damages Judgment Cannot Stand Because the Award Reached Beyond the Adjudicated Liability Ruling and Was Not Supported by Sufficient Proof. 21

VI. CONCLUSION ........ 23

CERTIFICATE OF SERVICE ........ 24

## TABLE OF AUTHORITIES

### CASES

Beezley v. Cal. Land Title Co. (In re Beezley), 994 F.2d 1433 (9th Cir. 1993) ..... 13

Fauser v. Green Tree Servicing, LLC (In re Fauser), 545 B.R. 907 (Bankr. S.D. Tex. 2016) ........ 11

In re Ritchey, 512 B.R. 847 (Bankr. S.D. Tex. 2014) ........ 11

Taggart v. Lorenzen, 587 U.S. 554 (2019) ........ 7, 9

White v. Nielsen (In re Nielsen), 383 F.3d 922 (9th Cir. 2004) ........ 4, 13

### STATUTES

11 U.S.C. § 524(a)(2) ........ 1, 9

28 U.S.C. § 158(a)(1) ........ 1

28 U.S.C. §§ 157(a), 1334 ........ 1

### RULES

Fed. R. Bankr. P. 7056 ........ 16

Fed. R. Bankr. P. 8012(a) ........ i

Fed. R. Civ. P. 56(a) ........ 16

## I. JURISDICTIONAL STATEMENT

The bankruptcy court had subject-matter jurisdiction under 28 U.S.C. §§ 157(a) and 1334 because this adversary proceeding arose in and related to the chapter 7 bankruptcy case of Clint Matthew Wallace and Sarah S. Wallace (together, "**Appellees**"), Case No. 24-20119, and sought relief for alleged violation of the discharge injunction entered in that case.

This Court has jurisdiction under 28 U.S.C. § 158(a)(1). On December 2, 2025, the bankruptcy court entered its Memorandum Opinion on Damages and Final Judgment in Adversary Proceeding No. 25-02001. Appellants Two Bobcats, Inc. ("**TBI**") and Andrew Cook (together with TBI, "**Appellants**") filed their notice of appeal on December 24, 2025, and the appeal was docketed in this Court as Civil Action No. 2:25-cv-00346 on December 30, 2025. The record was transmitted to this Court on February 12, 2026.

Appellants timely appealed. The bankruptcy court entered its Memorandum Opinion on Damages and Final Judgment on December 2, 2025. Appellants filed a post-judgment motion for reconsideration on December 8, 2025. Adv. ECF No. 66. The bankruptcy court denied that motion on December 10, 2025. Adv. ECF No. 68. Appellants then filed their notice of appeal on December 24, 2025. Dist. Ct. ECF No. 1. The appeal is therefore timely under Federal Rule of Bankruptcy Procedure 8002.

## II. STATEMENT OF ISSUES PRESENTED AND STANDARDS OF REVIEW

1. **Issue:** Whether the bankruptcy court erred in holding Appellants in contempt under 11 U.S.C. § 524(a)(2) where the court did not apply *Taggart*'s requirement that contempt may be imposed only when there is no objectively reasonable basis for the challenged conduct.

   **Standard:** This Court reviews the bankruptcy court's legal conclusions de novo. A contempt order is otherwise reviewed for abuse of discretion, but a bankruptcy court abuses its discretion when it applies an incorrect legal standard. To the extent this issue turns on the interpretation and application of *Taggart* and § 524(a)(2), review is de novo.

2. **Issue:** Whether the bankruptcy court erred in imposing contempt liability on Mr. Cook individually where the summary-judgment record did not establish, as a matter of law, that Mr. Cook personally asserted or sought to collect a discharged debt in his individual capacity.

   **Standard:** This Court reviews the bankruptcy court's legal conclusions de novo. To the extent the bankruptcy court imposed individual liability on Cook on Plaintiffs' motion for partial summary judgment, review is de novo. A contempt order is otherwise reviewed for abuse of discretion, but a bankruptcy court abuses its discretion when it applies an incorrect legal standard.

3. **Issue:** Whether the bankruptcy court erred in granting partial summary judgment on liability where the record contained genuine disputes of material fact relevant to contempt liability.

   **Standard:** This Court reviews the bankruptcy court's summary-judgment ruling de novo and applies the same standard that governed the bankruptcy court under Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056.

4. **Issue:** Whether the bankruptcy court erred in awarding compensatory damages, punitive damages, and attorneys' fees where portions of the award rested on theories not resolved in the liability ruling and on proof that did not establish recoverable damages with the required specificity.

   **Standard:** This Court reviews an award of damages, punitive damages, and attorneys' fees for abuse of discretion. Any underlying legal conclusions are reviewed de novo, and any factual findings are reviewed for clear error.

## III. STATEMENT OF THE CASE

This appeal arises from Adversary Proceeding No. 25-02001 in Appellees' chapter 7 case, No. 24-20119. (Bankr. ECF No. 1; Adv. ECF No. 1). Appellees alleged in the adversary proceeding that Appellants violated the discharge injunction through post-discharge demand and arbitration activity tied to a prepetition business

dispute. (Adv. ECF No. 24). On August 19, 2025, the bankruptcy court entered its Memorandum Opinion on Plaintiffs' Motion for Partial Summary Judgment, holding both Appellants in civil contempt, and on December 2, 2025, it entered its Memorandum Opinion on Damages and Final Judgment awarding actual damages, punitive damages, and attorneys' fees. (Adv. ECF Nos. 43, 62, 63). Appellants later moved for reconsideration of both the liability ruling and the damages judgment. (Adv. ECF Nos. 51, 66). The bankruptcy court denied both motions, and Appellants now appeal the liability ruling, the resulting damages judgment, and the orders denying reconsideration. (Adv. ECF Nos. 51, 56, 66, 68; Dist. Ct. ECF No. 1).

### A. The Underlying Bankruptcy Case and the Parties' Prepetition Dispute

Before the bankruptcy filing, the underlying business relationship was between Eminent Ecom, LLC ("**Eminent**") and TBI, not between Mr. Wallace personally and TBI. (Adv. ECF No. 24 ¶¶ 10–12; Adv. ECF No. 24-1; Adv. ECF No. 39 at 2, ¶ 6). Mr. Wallace formed Eminent in August 2021, and operated Eminent's business to assist start-ups with Amazon private-label ventures. (Adv. ECF No. 24 ¶ 10). Mr. Cook registered TBI in Ohio in March 2023. (Adv. ECF No. 24 ¶ 11). On March 15, 2023, Eminent and TBI entered into a Proposal and Services Agreement concerning those services. (Adv. ECF No. 24 ¶ 12; Adv. ECF No. 24-1; Adv. ECF No. 39 at 2, ¶ 6). Mr. Wallace signed that agreement on behalf

of Eminent, Mr. Cook signed it on behalf of TBI, and neither signed in an individual capacity. (Adv. ECF No. 24 ¶ 12; Adv. ECF No. 24-1).

Appellees later filed a joint chapter 7 petition on April 23, 2024. (Bankr. ECF No. 1; Adv. ECF No. 39 at 2, ¶ 7). Appellees did not schedule TBI or Mr. Cook as personal creditors. (Adv. ECF No. 24 ¶¶ 14–15). The bankruptcy court later entered a discharge. (Bankr. ECF No. 29).

### B. The Post-Discharge Communications and Arbitration Demand

On June 19, 2024, Mr. Gonzalez sent a letter advising TBI and Mr. Cook of Appellees' bankruptcy case. (Adv. ECF No. 24 ¶ 17; Adv. ECF No. 24-2). The parties later disputed the legal effect of that notice. (Adv. ECF No. 24 ¶¶ 17–18; Adv. ECF No. 24-2; Adv. ECF No. 39 at 3–4, ¶¶ 9–10). On August 21, 2024, the bankruptcy court entered Appellees' discharge. (Bankr. ECF No. 29; Adv. ECF No. 24 ¶ 19).

On September 6, 2024, counsel for TBI sent a Formal Demand for Relief addressed to Appellees and Eminent. (Adv. ECF No. 24 ¶ 20; Adv. ECF No. 24-3). The demand letter asserted claims arising from the parties' prepetition business dispute and referenced services performed under the agreement with Eminent. (Adv. ECF No. 24-3; Adv. ECF No. 39 at 3, ¶ 8). Counsel then exchanged emails with Mr. Gonzalez concerning whether any asserted claim had been discharged and whether TBI could proceed. (Adv. ECF No. 24 ¶¶ 24–26; Adv. ECF Nos. 24-4, 24-

5). In that exchange, counsel for TBI cited *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 926 (9th Cir. 2004), for the proposition that dischargeability in a no-asset chapter 7 case is not affected by scheduling. (Adv. ECF No. 24-5; Adv. ECF No. 39 at 3, ¶ 9; id. at 6, ¶ 24). Appellants' position was that TBI could proceed consistent with that legal view. (Adv. ECF No. 24-5; Adv. ECF No. 39 at 3, ¶ 9; id. at 6, ¶ 24).

On October 7, 2024, TBI submitted a demand for arbitration to JAMS naming Mr. Wallace as the respondent. (Adv. ECF No. 24 ¶ 27; Adv. ECF No. 24-6; Adv. ECF No. 39 at 3, ¶ 11). On November 8, 2024, Mr. Wallace sent JAMS a letter asserting that any claim against him personally had been discharged. (Adv. ECF No. 24 ¶ 29; Adv. ECF No. 24-7). JAMS later advised the parties that, in light of the discharge order, it could not proceed with administration unless the bankruptcy court determined that the debt had not been discharged or was not dischargeable. (Adv. ECF No. 51-4).

TBI later amended the arbitration demand to substitute Eminent in place of Mr. Wallace. (Adv. ECF No. 39-1 ¶ 2 & Ex. A; Adv. ECF No. 39 at 3, ¶ 11). These post-discharge communications and arbitration filings became the basis of Appellees' adversary proceeding and the bankruptcy court's later contempt ruling. (Adv. ECF No. 24 ¶¶ 20–30; Adv. ECF No. 43).

### C. The Adversary Proceeding and Liability Ruling

Appellees commenced this adversary proceeding on January 22, 2025. (Adv. ECF No. 1). Appellees later filed their Amended Complaint on March 3, 2025. (Adv. ECF No. 24). The Amended Complaint sought relief against both TBI and Mr. Cook and treated the June 19 notice letter, the September 6 demand letter, the related emails, and the arbitration demand as conduct violating the discharge injunction. (Adv. ECF No. 24 ¶¶ 17–30, Prayer).

Appellants moved to dismiss, and the parties briefed that motion. (Adv. ECF Nos. 28, 29, 30, 32). On June 23, 2025, the parties stipulated that the bankruptcy court could decide the motion to dismiss on the papers, and the bankruptcy court took the motion under advisement. (6/23/25 Tr. 3:6–4:5). The parties later proceeded into discovery and summary-judgment practice. (Adv. ECF Nos. 33, 34, 36, 39).

On May 30, 2025, Appellees moved for partial summary judgment on liability. (Adv. ECF No. 36). Appellants opposed that motion and submitted evidence disputing, among other things, whether the post-discharge communications sought to impose personal liability on Mr. Wallace, whether Appellants' conduct was objectively unlawful, and whether Mr. Cook could be held personally liable on the record presented. (Adv. ECF No. 39; Adv. ECF No. 39-1).

On August 19, 2025, the bankruptcy court entered its Memorandum Opinion on Plaintiffs' Motion for Partial Summary Judgment. (Adv. ECF No. 43). In that opinion, the bankruptcy court held that both TBI and Mr. Cook had violated the discharge injunction and held both in civil contempt. (Adv. ECF No. 43). The court resolved liability at that stage and left damages for later proceedings. (Adv. ECF No. 43; 8/28/25 Tr. 4:7–9; 9/4/25 Tr. 18:15–24).

### D. The Damages Proceedings, Post-Trial Briefing, and Final Judgment

After the bankruptcy court resolved liability, the case proceeded to a later hearing limited to damages. (Adv. ECF No. 43; 8/28/25 Tr. 5:14–16; 9/4/25 Tr. 18:15–24). At the August 28, 2025, pretrial conference, the bankruptcy court stated that "all that we have to do is take up the damages." (8/28/25 Tr. 5:14–16). At the September 4, 2025, hearing, the bankruptcy court again treated liability as already decided and limited the presentation to damages evidence. (9/4/25 Tr. 18:15–24).

At that hearing, Appellees presented testimony from Mr. Gonzalez, Mr. Wallace, Mrs. Wallace, and Mr. Newton concerning alleged emotional distress, time spent responding to the challenged conduct, and attorneys' fees. (9/4/25 Tr. 20:1–24:6; 30:6–72:9; 72:10–88:2; 88:3–111:24). Appellants cross-examined those witnesses and disputed the scope and recoverability of the requested damages and fees. (9/4/25 Tr. 24:7–29:25; 59:11–72:9; 82:13–88:2; 101:19–111:24).

During the damages trial, the bankruptcy court also raised whether Appellants' counsel acted improperly by blind-copying Appellees on an email sending the September 6 demand letter to their counsel. (9/4/25 Tr. 59:20–61:15; 59:23–60:14). The bankruptcy court requested post-trial briefing on whether that conduct was improper under Texas law and the Texas Disciplinary Rules. (9/4/25 Tr. 59:23–60:14; Adv. ECF Nos. 57, 58, 59).

On December 2, 2025, the bankruptcy court entered its Memorandum Opinion on Damages and Final Judgment. (Adv. ECF Nos. 62, 63). In that opinion and judgment, the bankruptcy court awarded actual damages, punitive damages, and attorneys' fees against both Appellants and entered final judgment. (Adv. ECF Nos. 62, 63). The final judgment incorporated the earlier liability determination against both TBI and Mr. Cook. (Adv. ECF Nos. 43, 63).

### E. Post-Judgment Motions and Appeal

After the bankruptcy court entered its August 19, 2025, liability ruling, Appellants moved for reconsideration of that ruling. (Adv. ECF No. 51). The bankruptcy court later denied reconsideration. (Adv. ECF No. 56).

After the bankruptcy court entered its December 2, 2025, Memorandum Opinion on Damages and Final Judgment, Appellants again moved for reconsideration. (Adv. ECF No. 66). The bankruptcy court denied that motion as well. (Adv. ECF No. 68).

Appellants then filed their notice of appeal. (Dist. Ct. ECF No. 1). This appeal followed.

## IV. SUMMARY OF ARGUMENT

The bankruptcy court's contempt ruling cannot stand because the court did not apply the governing standard under *Taggart v. Lorenzen*. Civil contempt for violation of the discharge injunction is permissible only when there is no objectively reasonable basis for concluding the challenged conduct was lawful. Here, Appellants advanced a legal basis for their conduct, and the record reflected an actual dispute over the legal effect of notice, discharge, and dischargeability in a no-asset chapter 7 case. Rather than decide whether there was no fair ground of doubt, the bankruptcy court effectively treated notice of the discharge and the intentional sending of the challenged communications as sufficient to impose contempt. That is not what *Taggart* permits.

Even apart from that legal error, partial summary judgment on liability was improper. The record contained genuine disputes about what the post-discharge letters, emails, and arbitration demand sought to collect, whether the challenged conduct was objectively unlawful, and whether contempt could be imposed as a matter of law. The court resolved those disputes against Appellants on a summary-judgment record, even though those disputes went directly to liability.

The judgment against Cook independently fails because the record did not establish, as a matter of law, that he personally asserted or sought to collect a discharged debt in his individual capacity. The underlying business relationship was between Eminent and TBI, not Wallace personally and TBI. The operative agreement was executed on behalf of those entities, and the challenged post-discharge demand activity was undertaken by counsel for TBI. On this record, the bankruptcy court could not properly impose individual contempt liability on Cook as a matter of law.

The damages judgment also cannot stand. After entering the liability ruling, the bankruptcy court repeatedly stated that the later proceeding would address damages only. Yet the final award swept more broadly, reaching issues not resolved in the liability ruling and relying on proof that did not establish recoverable damages with the required specificity. Because the compensatory, punitive-damages, and fee awards rested in part on matters beyond the adjudicated liability ruling and on insufficient proof, those awards should be vacated or, at minimum, remanded for further proceedings.

## V. ARGUMENT

### A. The Bankruptcy Court Applied the Wrong Legal Standard Under *Taggart*, So the Contempt Ruling Must Be Vacated

#### 1. *Taggart* Supplies the Governing Standard

Section 524(a)(2) provides that a bankruptcy discharge "operates as an

injunction" against acts to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). But an alleged violation of that injunction does not itself establish contempt. Because the discharge injunction is enforced through civil contempt, the governing inquiry is not simply whether the creditor knew of the discharge and intentionally took the challenged action. The question is whether "there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 568 (2019).

That rule is the centerpiece of *Taggart*. The Supreme Court rejected both strict liability and a subjective bad-faith standard. *Id.* at 562–69. In their place, the Court adopted an objective contempt standard drawn from traditional equitable principles. Under that standard, contempt is appropriate only when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful. *Id.* at 566–68. If the creditor's position is objectively reasonable, contempt is improper even if that legal position is ultimately rejected. *Id.* at 568.

That objective framework forecloses any rule under which contempt may be imposed merely because a creditor had notice of the discharge and intentionally sent the challenged communication or filed the challenged proceeding. The Supreme Court said so expressly. It explained that "most creditors are aware of discharge orders and intend the actions they take," and that a test keyed only to those facts "would operate much like a strict-liability standard." *Id.* at 566. That is not the law.

Notice of the discharge is relevant, and intentional conduct is relevant, but neither is dispositive. The dispositive question is whether the alleged contemnor lacked any fair ground of doubt about whether the discharge order prohibited the specific conduct at issue. *Id.* at 568.

That demanding standard exists for a reason. As *Taggart* recognized, a discharge order operates against a "complex statutory backdrop," and there will "often be at least some doubt as to the scope" of the order in a given case. *Id.* at 566–67. Courts therefore may not collapse the contempt inquiry into a simpler test of notice, intent, or even ultimate legal error. A creditor may be wrong without being contemptuous. The question is narrower and more rigorous: whether the creditor's position was so lacking in objective support that there was no fair ground of doubt that the discharge injunction barred the conduct. *Id.* at 568.

Accordingly, the bankruptcy court was required to apply *Taggart*'s objective no-fair-ground-of-doubt standard. Knowledge of the discharge and intentional conduct may be relevant, but they are not enough. Unless there was no objectively reasonable basis for concluding the challenged conduct might be lawful, contempt was unavailable.

**2. The Bankruptcy Court Recited *Taggart* but Functionally Reverted to a Notice-Plus-Intent Test**

Although the bankruptcy court cited *Taggart*, it did not apply the rule set forth by the Supreme Court in that case. The controlling question was whether there was

"no fair ground of doubt" that the discharge injunction barred the challenged conduct. *Taggart*, 587 U.S. at 568. But the bankruptcy court's analysis turned instead on two different points: (i) Appellants had notice of the discharge and (ii) Appellants intentionally engaged in the post-discharge conduct at issue. That is the very framework *Taggart* rejected.

The liability opinion makes the bankruptcy court's misapplication clear. The court began its analysis by reciting a pre-*Taggart* willfulness test: a creditor willfully violates the discharge injunction if it "(1) know[s] the injunction has been entered, and (2) intend[s] the actions that violate it," citing *Fauser v. Green Tree Servicing, LLC (In re Fauser)*, 545 B.R. 907 (Bankr. S.D. Tex. 2016), and *In re Ritchey*, 512 B.R. 847 (Bankr. S.D. Tex. 2014). (Adv. ECF No. 43 at 9). The court then stated that, "[u]nder the proper standard, TBI's argument that it did not act with the purpose or intent to violate the discharge is unavailing," because Appellees' discharge order prohibited collection efforts and TBI acknowledged the discharge in its demand letter. (Id. at 10). The court continued in the same vein, emphasizing that "[d]espite actual knowledge of the discharge, TBI continued to pursue its claims," and then concluding there was "no fair ground of doubt" that TBI's actions violated the discharge injunction. (*Id.* at 11). As to Mr. Cook, the court likewise held that "[t]he undisputed evidence shows [Mr.] Cook knew of the discharge and intended to assert and collect on his personal prepetition claim against [Appellees]." (*Id.* at 13).

That is not *Taggart*'s standard. *Taggart* makes clear that contempt does not follow simply because a creditor knew of the discharge and intentionally took the act later challenged. The Supreme Court explained that "most creditors are aware of discharge orders and intend the actions they take," and that a test keyed only to those facts "would operate much like a strict-liability standard." *Taggart*, 587 U.S. at 566. The *Taggart* Court rejected the strict-liability-like framework and adopted an objective one: contempt is permitted only when there is *no objectively reasonable basis for concluding that the challenged conduct might be lawful*. (*Id*. at 566–68). The required question, then, was not whether Appellants knew of Appellees' discharge and deliberately sent the demand letter, exchanged follow-up emails, or initiated arbitration activity. Instead, the question was *whether Appellants lacked any objectively reasonable basis to believe that the discharge injunction did not bar that conduct*. (*Id.* at 568).

The reconsideration order confirms that the bankruptcy court adhered to the same notice-plus-intent reasoning after Appellants squarely raised *Taggart*. In rejecting Appellants' "fair ground of doubt" argument, the court stated that Appellants "had notice of the bankruptcy case and the discharge deadlines," that their failure to timely seek nondischargeability relief did not create doubt, and that they "had actual knowledge of the discharge, but nevertheless sent a demand letter" and initiated arbitration against Mr. Wallace individually. (Adv. ECF No. 56 at 3).

Again, the court treated notice of the bankruptcy and discharge, coupled with deliberate post-discharge acts, as effectively dispositive.

The September 4, 2025, transcript confirms the same understanding. Appellees argued that "willfulness" meant TBI and Mr. Cook "knew of the bankruptcy" and "intended the act that violated the discharge injunction," and the bankruptcy court referred back to its opinion as finding that Mr. Cook "knew of the discharge and intended to assert and collect," while TBI's lack of "purpose or intent to violate the discharge" was "unavailing." (9/4/25 Tr. 7:22–25; 59:20–61:15). Both Appellees and the court thus understood the liability ruling to rest on the same notice-plus-intent framework reflected in the written orders.

But *Taggart* does not permit a court to infer contempt from notice plus action and then treat any asserted legal justification as beside the point. It requires the court to evaluate the asserted legal basis and determine whether it was so lacking in merit that there was no fair ground of doubt as to the discharge injunction's application. *Taggart*, 587 U.S. at 566–68. Here, Appellants advanced a legal position about dischargeability and the permissible scope of post-discharge litigation conduct. Whether that position was right or wrong, *Taggart* required the bankruptcy court to decide whether it was objectively unreasonable. It did not do so. It instead treated knowledge of the discharge and intentional conduct as the decisive facts. That was

a notice-plus-intent analysis, not the objective inquiry *Taggart* requires. Because the bankruptcy court applied the wrong legal rule, the contempt ruling cannot stand.

### 3. At a Minimum, a Fair Ground of Doubt Existed as to Whether the Discharge Injunction Barred Appellants' Conduct

Even if the bankruptcy court had stated the correct rule, contempt still was unavailable because this record established, at minimum, a fair ground of doubt as to whether the discharge injunction barred the challenged conduct. *Taggart* does not require that Appellants ultimately be correct—it requires *no objectively reasonable basis* for concluding the challenged conduct might be lawful. 587 U.S. at 566–68. Appellees did not make that showing here.

*First*, the governing law was, at minimum, debatable. Counsel expressly cited *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 926–27 (9th Cir. 2004), for the proposition that dischargeability in a no-asset chapter 7 case is not affected by scheduling, and stated that TBI intended to proceed consistent with that view. (Adv. ECF No. 24-5; Adv. ECF No. 39 at 3, ¶ 9; id. at 6, ¶ 24). Authorities such as *Nielsen* and *Beezley* recognize that, in a no-asset chapter 7 case, the discharge consequences of an omitted debt depend on the nature of the debt rather than merely on whether it appeared on the schedules. *Nielsen*, 383 F.3d at 926–27; *Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434–38 (9th Cir. 1993) (O'Scannlain, J.,

concurring). Whether that position would ultimately prevail is beside the point. It was, at minimum, objectively arguable. That alone defeats contempt under *Taggart*.

*Second*, the nature of the challenged conduct itself created substantial objective doubt. This was not a paradigmatic collection effort aimed at extracting payment from a discharged debtor through garnishment, repossession, or repeated direct collection demands. The underlying business relationship was between Eminent and TBI, not between Mr. Wallace personally and TBI (or Mr. Cook), and the operative agreement was executed only on behalf of those entities. (Adv. ECF No. 24 ¶ 12; Adv. ECF No. 24-1; Adv. ECF No. 39 at 2, ¶ 6). The September 6, 2024, demand letter was sent by counsel for TBI, addressed to Appellees and Eminent, and asserted claims arising from the parties' prepetition business dispute. (Adv. ECF No. 24 ¶ 20; Adv. ECF No. 24-3; Adv. ECF No. 39 at 3, ¶ 8). Counsel then exchanged emails with Mr. Gonzalez about whether any claim had been discharged and whether TBI could proceed. (Adv. ECF No. 24 ¶¶ 24–26; Adv. ECF Nos. 24-4, 24-5). A reasonable lawyer could view that conduct as litigation-oriented advocacy concerning a disputed claim and a disputed dischargeability issue, not as plainly prohibited coercive collection from the debtor personally.

*Third*, the arbitration history confirms that the matter was objectively debatable rather than plainly contemptuous. TBI filed an arbitration demand naming Mr. Wallace. (Adv. ECF No. 24 ¶ 27; Adv. ECF No. 24-6; Adv. ECF No. 39 at 3, ¶

11). Mr. Wallace responded that any personal claim against him had been discharged, and JAMS then advised the parties that it could not proceed unless the bankruptcy court determined that the debt had not been discharged or was not dischargeable. (Adv. ECF No. 24 ¶ 29; Adv. ECF No. 24-7; Adv. ECF No. 51-4). TBI then amended the arbitration demand to substitute Eminent in place of Mr. Wallace. (Adv. ECF No. 39-1 ¶ 2 & Ex. A; Adv. ECF No. 39 at 3, ¶ 11). Those facts do not reflect defiance of a clear injunction. They reflect an actual legal dispute about discharge scope, followed by cessation and correction once the issue crystallized in the arbitral forum.

Taken together, these facts defeat any finding that there was "no fair ground of doubt" as to whether the discharge injunction barred Appellants' conduct. *Taggart*, 587 U.S. at 568. Appellants advanced a contemporaneous legal basis grounded in existing authority, acted through counsel in a corporate and litigation-oriented posture, and then halted and corrected the arbitration once the discharge issue crystallized. On this record, contempt was unavailable as a matter of law.

#### 4. The Bankruptcy Court Improperly Faulted Appellants for Not First Seeking a Dischargeability Determination

The bankruptcy court also erred by treating Appellants' failure to seek a preemptive dischargeability determination before the Rule 4007(c) deadline as part of the basis for contempt. That reasoning improperly shifted the *Taggart* inquiry

away from whether Appellants' position was objectively reasonable and toward whether Appellants first obtained a bankruptcy-court determination before acting.[1]

The reconsideration order makes the point clear. In rejecting Appellants' "fair ground of doubt" argument, the bankruptcy court emphasized that Appellants "had notice of the bankruptcy case and the discharge deadlines," that they "did not file a complaint under § 523(c) before the deadline," and that they nevertheless later sent the demand letter and initiated arbitration. (Adv. ECF No. 56 at 3). The liability opinion likewise relied on the fact that TBI did not file a timely nondischargeability action and instead proceeded with post-discharge demand and arbitration activity. (Adv. ECF No. 43 at 11). In substance, the court treated the absence of a prior § 523 determination as negating any fair ground of doubt.

That is not *Taggart*'s rule. *Taggart* recognizes that discharge orders operate against a "complex statutory backdrop" and that there will "often be at least some doubt as to the scope of such orders." *Taggart*, 587 U.S. at 566-67. The relevant question therefore is not whether a creditor first sought judicial clearance—it is instead whether there was "no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* at 566. A creditor may be mistaken without

[1] *Taggart* expressly rejected any rule that would pressure creditors to obtain advance discharge determinations before acting. *See Taggart*, 587 U.S. at 566–67 ("We doubt, however, that advance determinations would provide a workable solution to a creditor's potential dilemma."); *id.* at 567 (explaining that frequent use of advance determinations would shift litigation out of "state courts, which have concurrent jurisdiction over such questions," and into federal court).

being contemptuous. *Id.* at 568. That principle would mean little if contempt could be imposed whenever a creditor failed to obtain an advance ruling before acting.

The error matters here because Appellants did not proceed in the face of an order specifically forbidding the conduct they undertook. They advanced a legal position about dischargeability in a no-asset chapter 7 case, stated that position contemporaneously, and acted consistent with it. Whether that position was correct is a merits question. Under *Taggart*, the contempt question was narrower: whether that position was so lacking in objective support that there was no fair ground of doubt as to the discharge injunction's application. The bankruptcy court did not answer that question. It instead treated Appellants' failure to file a timely § 523 action, combined with their later conduct, as dispositive.

That approach cannot be squared with *Taggart*. The absence of a pre-dischargeability ruling may bear on the parties' dispute, but it does not itself eliminate objective doubt. Nor does it transform a disputed legal position into contempt. By faulting Appellants for not first obtaining a dischargeability determination and then using that omission to support contempt, the bankruptcy court again applied the wrong legal framework. The contempt ruling must be vacated.

### B. Partial Summary Judgment on Liability Was Improper Because the Record Contained Genuine Disputes of Material Fact

Even apart from the *Taggart* error, the bankruptcy court erred in granting partial summary judgment on liability because the record contained genuine disputes of material fact going directly to contempt liability. Summary judgment is proper only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056. In applying that standard, the court must view the evidence in the light most favorable to the nonmovant and may not weigh competing inferences or resolve factual disputes. Here, however, the bankruptcy court resolved disputed facts and disputed inferences against Appellants on issues central to whether contempt could be imposed at all.

*First*, the record contained a genuine dispute as to what the challenged post-discharge communications and arbitration demand actually sought to do. Appellees characterized the September 6 demand letter, the ensuing emails, and the arbitration demand as efforts to collect a discharged debt from Mr. Wallace personally. (Adv. ECF No. 24 ¶¶ 20–30; Adv. ECF No. 36). Appellants disputed that characterization. They pointed to the underlying business relationship between Eminent and TBI, the fact that the operative agreement was executed only on behalf of those entities, the content and addressees of the September 6 demand letter, and the litigation-oriented posture in which counsel communicated concerning a disputed claim and a disputed

dischargeability issue. (Adv. ECF No. 24-1; Adv. ECF No. 24-3; Adv. ECF No. 39 at 2–6, ¶¶ 6–24; Adv. ECF No. 39-1). Whether the challenged conduct constituted an attempt to impose personal liability on Mr. Wallace or instead reflected disputed litigation conduct concerning an entity-level business claim was a material question, and the summary-judgment record did not resolve it as a matter of law.

*Second*, the record contained a genuine dispute as to whether Appellants' conduct was objectively unlawful under *Taggart*. Appellants did not deny that they acted after learning of Appellees' bankruptcy and discharge. But they submitted evidence showing that they advanced a contemporaneous legal position about the effect of discharge in a no-asset chapter 7 case, expressly cited authority supporting that position, and stated that TBI intended to proceed consistent with that view. (Adv. ECF No. 24-5; Adv. ECF No. 39 at 3, ¶ 9; id. at 6, ¶ 24). Appellants also submitted evidence concerning the disputed scope of the underlying claim, the entity-based nature of the business relationship, and the later amendment of the arbitration demand to substitute Eminent for Mr. Wallace. (Adv. ECF No. 39 at 2–3, ¶¶ 6–11; Adv. ECF No. 39-1 ¶ 2 & Ex. A). At minimum, that evidence created a triable issue as to whether there was a fair ground of doubt about the discharge injunction's application. The bankruptcy court could not properly resolve that issue on summary judgment by crediting Appellees' view of the legal and factual significance of the challenged conduct.

*Third*, the record contained a genuine dispute as to whether Mr. Cook could be held personally liable on this record at all. Appellees sought summary judgment against both TBI and Mr. Cook individually. (Adv. ECF No. 24; Adv. ECF No. 36). Appellants disputed that Mr. Cook personally asserted or sought to collect any discharged debt in his individual capacity. They pointed to the fact that the operative business agreement was between Eminent and TBI, that Mr. Cook signed it only on behalf of TBI, and that the challenged post-discharge communications were sent by counsel for TBI. (Adv. ECF No. 24-1; Adv. ECF No. 39 at 2–6, ¶¶ 6–24; Adv. ECF No. 39-1). Whether Mr. Cook acted individually, as opposed to in a representative or corporate capacity, was therefore disputed and material. Yet the bankruptcy court resolved that issue against him as a matter of law. (Adv. ECF No. 43 at 12–13).

These disputes were not collateral. They went to the heart of liability: what conduct occurred, what that conduct meant, whether it was objectively prohibited, and who, if anyone, could be personally charged with it. The bankruptcy court nevertheless granted summary judgment on contempt liability and left only damages for later proceedings. (Adv. ECF No. 43; 8/28/25 Tr. 5:14–16; 9/4/25 Tr. 18:15–24). That was clear error. Because the summary-judgment record contained genuine disputes of material fact relevant to contempt liability, the liability ruling must be reversed and the case remanded for further proceedings.

### C. The Judgment Against Mr. Cook Cannot Stand Because the Record Did Not Establish, as a Matter of Law, That He Personally Asserted or Sought to Collect a Discharged Debt in His Individual Capacity

The judgment against Mr. Cook independently fails because the summary-judgment record did not establish, as a matter of law, that he personally asserted or sought to collect a discharged debt in his individual capacity. The underlying transaction was between Eminent and TBI. The operative agreement was executed only on behalf of those entities, and neither Mr. Wallace nor Mr. Cook signed in an individual capacity. (Adv. ECF No. 24 ¶ 12; Adv. ECF No. 24-1; Adv. ECF No. 39 at 2, ¶ 6).

The challenged post-discharge conduct was likewise undertaken in TBI's name through counsel. The September 6, 2024, demand letter was sent by counsel for TBI. (Adv. ECF No. 24 ¶ 20; Adv. ECF No. 24-3). The follow-up emails addressed whether TBI could proceed in light of the discharge. (Adv. ECF No. 24 ¶¶ 24–26; Adv. ECF Nos. 24-4, 24-5). The arbitration demand was submitted in TBI's name, and TBI later amended that demand to substitute Eminent in place of Mr. Wallace. (Adv. ECF No. 24 ¶ 27; Adv. ECF No. 24-6; Adv. ECF No. 39 at 3, ¶ 11; Adv. ECF No. 39-1 ¶ 2 & Ex. A).

On that record, the bankruptcy court could not conclude as a matter of law that Mr. Cook personally asserted an individual claim or personally sought to collect a discharged debt in his own capacity. At most, the record showed that Mr. Cook

was TBI's principal and knew of the discharge while TBI, through counsel, pursued its position. That is not enough to support summary judgment imposing individual contempt liability on him.

Appellants squarely disputed that proposition in opposing summary judgment. They argued that the operative agreement was between Eminent and TBI, that the post-discharge communications were undertaken by counsel for TBI, and that the record did not establish personal liability against Mr. Cook. (Adv. ECF No. 39 at 2–6, ¶¶ 6–24; Adv. ECF No. 39-1). At minimum, that created a genuine dispute as to whether Mr. Cook acted individually or only in a representative corporate capacity. The bankruptcy court could not resolve that dispute on summary judgment by drawing the inference most favorable to Appellees.

The bankruptcy court nonetheless held that "[t]he undisputed evidence shows [Mr.] Cook knew of the discharge and intended to assert and collect on his personal prepetition claim against [Appellees]." (Adv. ECF No. 43 at 13). But that conclusion assumes the very point in dispute: that the claim was Mr. Cook's personal claim and that the challenged conduct reflected personal collection activity by him individually. The cited record does not establish either proposition as a matter of law. At most, it shows that Mr. Cook was associated with TBI, signed the underlying agreement on TBI's behalf, and knew of the discharge while TBI, through counsel,

pursued its asserted position. That is not enough to support summary judgment imposing personal contempt liability on him.

Nor can the bankruptcy court collapse corporate conduct into individual contempt liability merely because Mr. Cook was TBI's principal. Contempt liability under § 524(a)(2) still requires record support tying the individual defendant to the specific allegedly prohibited conduct in an individual capacity. Here, the summary-judgment record did not conclusively show that Mr. Cook personally sent the demand letter, personally sent the emails, personally filed the arbitration demand in his own name, or personally sought to recover on a discharged debt owed to him individually. The court therefore erred in entering judgment against him personally.

Because the record did not establish, as a matter of law, that Mr. Cook personally asserted or sought to collect a discharged debt in his individual capacity, the contempt judgment against him must be reversed. At minimum, the Court should vacate the judgment against Mr. Cook and remand for further proceedings.

### D. The Damages Judgment Cannot Stand Because the Award Reached Beyond the Adjudicated Liability Ruling and Was Not Supported by Sufficient Proof

Even if some form of contempt liability could stand, the December 2, 2025, damages judgment cannot. By the time the case reached the September 4, 2025, hearing, the bankruptcy court had already resolved liability and limited the remaining proceedings to damages. At the August 28, 2025, pretrial conference, the

court stated that "all that we have to do is take up the damages," and at the September 4 hearing it again treated liability as already decided and limited the presentation accordingly. (8/28/25 Tr. 5:14–16; 9/4/25 Tr. 18:15–24). Having done so, the court could not use the later damages proceeding to enlarge the predicate for sanctions beyond the conduct resolved in the August 19, 2025, liability ruling.

But that is what occurred. During the September 4 hearing, the bankruptcy court raised an additional issue not adjudicated in the liability ruling: whether Appellants' counsel acted improperly by blind-copying Appellees on an email transmitting the September 6 demand letter to their counsel. (9/4/25 Tr. 59:20–61:15; 59:23–60:14). The court then ordered post-trial briefing on that issue under Texas law and the Texas Disciplinary Rules. (9/4/25 Tr. 59:23–60:14; Adv. ECF Nos. 57, 58, 59). Whatever the merits of that separate issue, it was not part of the summary-judgment liability ruling. The bankruptcy court therefore could not use a later damages-only proceeding to expand the basis for sanctions, increase the scope of compensable fees, or influence the punitive component of the final award with matters first introduced after liability had already been declared complete.

That defect independently undermines the fee award. A compensatory contempt award may include only losses caused by conduct actually adjudicated as contemptuous. *See Taggart*, 587 U.S. at 566–68. Yet the later proceedings included work on matters beyond the liability ruling itself, including post-trial briefing on the

blind-copying issue and work related to the motion to disqualify and the hearing on that motion. (Adv. ECF Nos. 57, 58, 59, 62, 63). Fees incurred litigating matters not themselves established as contemptuous conduct cannot be folded into a compensatory contempt award simply because they arose in the same adversary proceeding. At minimum, the record does not reflect any segregation limiting the fee award to work caused by conduct already adjudicated as contemptuous.

The compensatory award also cannot stand as entered because the proof at the damages hearing did not establish recoverable loss with the required specificity. Appellees presented testimony concerning emotional distress, time spent responding to the challenged conduct, and attorneys' fees. (9/4/25 Tr. 20:1–24:6; 30:6–72:9; 72:10–88:2; 88:3–111:24). Appellants disputed both the scope and recoverability of that proof through cross-examination. (9/4/25 Tr. 24:7–29:25; 59:11–72:9; 82:13–88:2; 101:19–111:24). On this record, the bankruptcy court could not simply aggregate all claimed distress, time, and fee amounts without tying each component to conduct already adjudicated as sanctionable and to losses actually caused by that conduct. The final judgment does not reflect that limiting analysis.

The punitive-damages award fails as well. If the underlying contempt ruling is reversed or vacated, the punitive component necessarily falls with it. But even apart from the liability errors addressed above, punitive relief cannot rest on an expanded theory of wrongdoing developed only after liability had supposedly been

fixed. Once the bankruptcy court limited the remaining proceedings to damages, it could not later introduce new alleged misconduct and then allow that expanded presentation to inform the sanction calculus.

In short, the bankruptcy court said the later proceeding would address damages only, but the final judgment did more than quantify relief flowing from an already-established predicate. It introduced new issues, required additional litigation on matters outside the liability ruling, awarded fees without a demonstrated segregation to adjudicated contempt, and entered compensatory and punitive relief without confining the award to conduct previously and properly resolved as sanctionable. The damages, punitive-damages, and attorneys' fee awards therefore should be vacated. At minimum, they should be remanded for a new determination confined to losses, if any, caused by conduct properly established as contemptuous.

## VI. CONCLUSION

For these reasons, Appellants respectfully request that the Court reverse the bankruptcy court's contempt ruling, vacate the damages judgment in its entirety, and render judgment that Appellees take nothing. Alternatively, Appellants request that the Court vacate the judgment and remand for further proceedings consistent with this Court's opinion.

Dated: March 19, 2026,

Respectfully Submitted,

**EISWEIRTH LAW, PLLC**

*/s/ Thomas J. Eisweirth*
Thomas J. Eisweirth (Bar ID 24121614)
5900 Balcones Drive, Suite 16746
Austin, Texas 78731
Telephone: (512) 663-7525
thomas@eisweirthlaw.com

***Counsel to Appellants Two Bobcats, Inc. and Andrew Cook***

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because this brief contains **6,955** words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(f).

*/s/ Thomas J. Eisweirth*
Thomas James Eisweirth

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 19, 2026, a true and correct copy of the foregoing document was served on all counsel on record with the Court's electronic filing system, CM/ECF.

*/s/ Thomas J. Eisweirth*
Thomas James Eisweirth