United States District Court
Southern District of Texas
ENTERED
October 05, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TWO BOBCATS, INC., *et al.* | § | CIVIL ACTION NO. 2:25-CV-00346 |
| Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| CLINT MATTHEW WALLACE, *et al.* | § | |
| Appellees. | § | |

# MEMORANDUM AND RECOMMENDATION

Appellants Two Bobcats, Inc. ("TBI") and Andrew Cook ("Cook") filed this appeal of the United States Bankruptcy Court's orders granting summary judgment, holding TBI and Cook in civil contempt, and imposing sanctions in an adversary proceeding. (D.E. 7 at 6-7). Specifically, Appellants challenge the Bankruptcy Court's rulings as to (1) the Court's contempt finding, arguing the Court did not apply the objectively reasonable standard in *Taggart v. Lorenzen*, 587 U.S. 554 (2019), (2) Cook's individual contempt liability, (3) the granting of summary judgment where there were genuine disputes of material fact, and (4) the awarding of damages and attorneys' fees in the adversary proceeding. (*Id.*). For the reasons stated herein, the undersigned recommends the Bankruptcy Court's judgment and damages award be **AFFIRMED**.

Also pending are Appellees' Motion to Dismiss (D.E. 5) and Appellants' Motion for Extension of Time to File Appellants' Brief (D.E. 6). Appellees move to dismiss this appeal arguing the appeal brief is untimely filed pursuant to Federal Rule of Bankruptcy Procedure 8018(a)(1), which requires Appellants to file their appellate brief within 30

days after notice of docketing. Appellants filed their motion for extension of time on March 18, 2026[1] and their briefing on March 19, 2026, when briefing was due to be filed under the rule on March 16, 2026. Rule 8001(a) states that "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court ... deems appropriate, which may include dismissal of the appeal." As the language of the rule makes clear, only the failure to file a notice of appeal, which deprives the reviewing court of jurisdiction, mandates dismissal. In contrast, the district court does not invariably dismiss for breaches of other procedural rules, including Rule 8006. See *In re Tampa Chain Co., Inc.*, 835 F.2d 54, 55 (2d Cir.1987) (*per curiam*) (citations omitted). Rather, the court must exercise discretion and consider what sanctions are appropriate. Dismissal is a harsh and drastic sanction that is not appropriate in all cases, even though it lies within the district court's discretion. *In re CPDC Inc.*, 221 F.3d 693, 698–99 (5th Cir. 2000); See Editors' Comment, NORTON BANKRUPTCY RULES at 523 ("While counsel for the appellant may be sanctioned, a dismissal of the appeal would unfairly penalize the client."). Because the three-day delay in the filing of Appellants' brief constitutes a procedural rule other than the timely filing of the notice of appeal, no bad faith behavior has been shown, and Appellees suffered no prejudice in the three day delay, the undersigned recommends

[1] Appellants submit in the motion for extension of time that counsel confused the 30 day requirement under Federal Rule of Bankruptcy Procedure 8018 and the 40 day filing requirement under Federal Rule of Appellate Procedure 31(a). (D.E. 6 pg. 1).

that Appellees' Motion (D.E. 5) be **DENIED** and Appellants' Motion (D.E. 6) be **GRANTED**.

## I. Jurisdiction

This Court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. §158(a)(1), which states that "the district courts of the United States shall have jurisdiction to hear appeals…from final judgments, orders, and decrees…of bankruptcy judges…". A "final" order in a bankruptcy case is any order that "ends a discrete judicial unit in the larger case.". *Smith v. Revie*, 817 F.2d 365, 367-68 (5th Cir. 1987).

## II. Standard of Review

On appeal, a Bankruptcy Court's "conclusions of law and mixed law and fact questions are reviewed *de novo*, while findings of fact are reviewed for clear error." *In re McLain*, 516 F.3d 301, 307 (5th Cir. 2008); *In re Stonebridge Technologies, Inc*., 430 F.3d 260, 265 (5th Cir. 2005). Further, Federal Rule of Bankruptcy Procedure 8013 provides, "on appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.". Fed. R. Bankr. P. 8013.

A Bankruptcy Court's decision on sanctions is reviewed for abuse of discretion. *In re Sadkin,* 36 F.3d 473, 475 (5th Cir.1994). As "the imposition of sanctions is a matter of

discretion for the Bankruptcy Court," we "review under an abuse of discretion standard." *Id*. If we were to reach the Bankruptcy Court's award of attorney's fees, we would review it for abuse of discretion. *In re Cahill,* 428 F.3d 536, 539 (5th Cir.2005).

## III. Factual and Procedural Background

The Bankruptcy Court summarized the background information as follows:

> "Clint Matthew Wallace and Sarah W. Wallace are a married couple who, on April 23, 2024, filed a joint voluntary petition under chapter 7 of the Bankruptcy Code. They received their discharge on August 21, 2024. The discharge order expressly prohibits any attempt to collect discharged debts as personal liability of the Wallaces.
>
> Before the bankruptcy filing, Mr. Wallace operated Eminent Ecom, LLC, formed in Wyoming. Eminent provided services to assist start-ups with their Amazon private label businesses.
>
> Eminent entered into a Proposal and Services Agreement with Two Bobcats, Inc., an Ohio limited liability company owned by Andrew Cook. The Agreement was signed by Mr. Wallace, in his capacity as an officer of Eminent, and by Cook, in his capacity of officer of TBI. Under the Agreement, TBI paid Eminent $35,000.00 in consideration to launch a private label product on Amazon.
>
> At the time of the Filing, the Wallaces did not list TBI or Cook as creditors who had claims against the Wallaces in their personal capacity. Post-petition, the Wallaces allege that they learned that TBI and Cook may be pursuing a cause of action against them personally. Because they were unaware of the assertion of personal liability against them, the Wallaces did not initially list either Cook or TBI as a creditor.
>
> Joel Gonzalez, attorney for the Wallaces, sent notice of the Wallaces' chapter 7 bankruptcy case to Thomas Eisweirth, attorney for TBI and Cook, on June 19, 2024. On June 20, 2024, the Chapter 7 Trustee moved to extend the deadline to object to discharge to August 19, 2024. On July 15, 2024, the Court granted the Trustee's motion and extended the discharge objection deadline to August 19, 2024. TBI and Cook did not object to discharge by the deadline. On August 21, 2024, the Court entered its Discharge Order. The Discharge Order is on Official Form 318. Official Form 318 includes an "Explanation of Bankruptcy Discharge in a Chapter 7 Case." The Official Form's explanation provides in part:
>
>> This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the

> debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

TBI and Cook were never sent direct notice of the discharge order, as they were not listed as creditors on the Wallaces' schedules. The certificate of service confirms that they did not receive notice of the discharge order.

Two weeks after entry of the Discharge Order, attorney Eisweirth sent a formal Demand Letter addressed to the Wallaces. The letter seeks:

- Immediate reimbursement of $35,000 paid for the 'Business in a Box' program.
- Immediate reimbursement of the additional $8,747.50 paid for marketing services.
- Compensation in the amount of $10,000 for the distress and inconvenience caused by your fraudulent and deceptive conduct.
- Recovery of attorney's fees and court costs incurred in pursuing this matter.

In response, Gonzalez informed Eisweirth of the November 15 proof of claim bar date and the Wallaces' discharge of their personal debts. Five days after the Demand Letter was sent, TBI was served with the notice of the claim bar date.

On October 7, 2024, Eisweirth filed for arbitration between TBI and Mr. Wallace over the same claims from the Demand Letter. The arbitrator declined to proceed with arbitration after Mr. Wallace submitted documentation of his personal discharge on November 8, 2024. TBI then amended its arbitration proceedings to replace Mr. Wallace with Eminent.

The claim bar date passed on November 15, 2024 without TBI or Cook submitting a proof of claim. TBI moved for extension to object to discharge and to file a proof of claim. The Court denied the requested extension.

The Wallaces commenced this adversary proceeding on April 24, 2025, accusing TBI and Cook of willfully violating the discharge injunction."

(D.E. 4-1 at 72-75).

On May 16, 2025, Cook filed a motion to dismiss the adversary proceeding and a motion for sanctions. (D.E. 4-1 at 54-71). On June 30, 2025, the Wallaces moved for partial summary judgment on the liability issue. (D.E. 4-1 at 22-53). On August 19, 2025, the Bankruptcy Court denied Cook's motions to dismiss and for sanctions and held

that TBI and Cook had violated the discharge injunction, granting the Wallaces' motion for summary judgment on liability. (D.E. 4-1 at 72-75).

The court denied TBI's motion to dismiss the adversary proceeding against Cook, rejecting arguments regarding personal jurisdiction, failure to identify actions, and Texas liability shields. Under Bankruptcy Rule 7004(d), the court established personal jurisdiction based on nationwide service of process requiring minimum contacts with the United States rather than a specific state. (D.E. 4-1 pgs. 77-79). The court rejected TBI's argument that the Complaint failed to identify any specific actions taken by Cook. First, the court found that Cook was legally responsible for the "Formal Demand for Relief" sent by himself and TBI, which contained specific personal allegations against the Wallaces. *Id.* The court noted that Cook could not make personal demands and simultaneously claim a corporate shield. Second, because clients are legally bound by the actions of their lawyers, the court concluded that Cook was accountable for Eisweirth's actions, including threatening to ignore the bankruptcy discharge and filing for arbitration. *Id.* The court also rejected TBI's third ground for dismissal, ruling that the argument regarding corporate shields "completely misses the mark." The court's reasoning included that the Wallaces were not attempting to hold Cook responsible for TBI's actions using corporate veil-piercing or alter-ego theories. *Id.* Instead, the Complaint directly alleged that the Wallaces were personally harmed by Cook, TBI, or both. *Id.* Further, the Court noted that the formal Demand Letter sent by their attorney explicitly stated that "Mr. Cook possesses several claims" personally against the Wallaces

and their business. *Id*. The Court opined that Cook cannot claim a corporate shield for actions involving his own personal claims. *Id*. Because none of TBI's three arguments were successful, the court denied Cook's Motion to Dismiss. *Id*.

Regarding the Wallaces' Motion for Summary Judgment, the Bankruptcy Court stated that TBI did not dispute that it sent the Demand Letter and filed an arbitration demand against Mr. Wallace for prepetition claims. (D.E. 4-1 pgs. 80-84). The court noted these are clearly illegal post-discharge collection acts. *Id*. The court rejected TBI's argument that its post-discharge collection efforts were "objectively reasonable," concluding that TBI lacked any lawful basis for its actions and should be held in civil contempt. *Id*. Citing the Supreme Court case *Taggart v. Lorenzen*, the court noted that civil contempt is warranted if there is no "fair ground of doubt" that the creditor's conduct was unlawful. *Id*.; 587 U.S. 554, 565 (2019). The Court noted that the standard is strictly objective, meaning TBI's subjective intent or claims of "good faith" are irrelevant. *Id*. Although TBI claimed it lacked proper notice of the discharge injunction, the court found this defense directly contradicted by the evidence to include: (1) TBI's own letter explicitly acknowledged the bankruptcy and discussed seeking an exception to the discharge, and (2) when the Wallaces' bankruptcy lawyer explicitly warned TBI of the discharge, TBI's attorney, Eisweirth, defiantly replied via email: *"I will be going straight to district court without concern of any discharge."* *Id*. The Court found that, because TBI possessed clear knowledge of the discharge order—which explicitly bans contacting

debtors to collect personal debts—its aggressive post-discharge actions left no room for a "fair ground of doubt." *Id.*; *Taggart*, 587 U.S. at 565.

Accordingly, the court found TBI in civil contempt, ruling that there was "no fair ground of doubt" that TBI willfully violated the discharge injunction by pursuing arbitration against Mr. Wallace. (D.E. 4-1 pg. 82). The Court noted that TBI argued under *In re Nielsen,* 383 F.3d 922 (9th Cir. 2004), unscheduled debts are not discharged in no-asset, no-bar-date Chapter 7 cases. *Id*. The court ruled this interpretation was "plainly wrong," clarifying that *In re Nielsen* actually holds that unscheduled dischargeable debts *are* discharged because creditors are not prejudiced when there are no assets to distribute. *Id*. The Court looked to Fifth Circuit precedent in *Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987), stating an unscheduled fraud claim only avoids discharge if the creditor lacked notice of the bankruptcy. *Id*. The Court found that TBI and Cook received actual notice of the bankruptcy on June 19, 2024, and that TBI was legally required to object to the discharge or file a nondischargeability complaint by July 19, 2024[2]. *Id*. The Court noted that because TBI missed this deadline, it could not evade federal rules by pursuing collection via a post-discharge Demand Letter and arbitration. *Id*.

Finally, the Bankruptcy Court found Cook in willful violation of the discharge injunction, completely rejecting his attorney's defense that the post-discharge Demand Letter was sent exclusively on behalf of TBI. (D.E. 4-1 pgs. 83-84). The court's decision

[2] The undersigned believes this should state August 19, 2024 based on the 60 day requirement under Federal Rule of Bankruptcy Procedure 4007(c).

rested on three key findings. First, although allegedly sent only for TBI, the letter was replete with Cook's personal prepetition allegations regarding his $35,000 investment. *Id*. It explicitly threatened the Wallaces with personal liability, stating that *"Mr. Cook possesses several claims against Eminent Ecom and you, personally"* and that he was entitled to treble damages under the DTPA. Second, the undisputed evidence established that Cook had actual knowledge of the bankruptcy discharge but fully intended to assert and collect on his personal prepetition claims anyway. Finally, Cook was legally bound by the actions of his attorney, Eisweirth, who acted within the scope of his representation as Cook's agent and rendered Cook personally liable for the unlawful collection letter. *Id*.

On September 4, 2025, the Bankruptcy Court held a hearing on damages and entered its order awarding the Wallaces $42,343.08 in total damages on December 2, 2025. (D.E. 4-1 at 86-94). Specifically, the Court awarded the Wallaces $1,885.00 in economic damages, $3,000.00 in emotional distress damages, $1,000.00 in punitive damages, and $36,458.08 in attorney's fees and expenses. *Id*. The court ruled that compensating debtors for personal time and lost wages is necessary to encourage the defense of court orders. *Id*. Based on the credible trial testimony of the debtors, the court calculated the award using their hourly earnings and time spent prosecuting the claim using the following equations: (1) Mr. Wallace: 35 hours spent × $41.00/hour = $1,435.00; and (2) Ms. Wallace: 15 hours spent × $30.00/hour = $450.00. *Id*. The Court noted that to recover emotional distress damages, plaintiffs must provide specific,

"particularized and extensive" evidence rather than just general anger or frustration. *Id*. The court found the testimony of Ms. Wallace sufficient because she detailed specific physical symptoms, testifying that TBI's Demand Letter triggered two 10-minute panic attacks involving hyperventilation, difficulty breathing, and forced isolation from her children. *Id*. The court rejected Mr. Wallace's individual request, ruling that his symptoms—lost sleep and chest pressure—did not meet the high legal threshold required for a damages award. *Id*. The court ultimately awarded the full requested $3,000.00 for emotional distress based entirely on Ms. Wallace's severe symptoms. *Id*.

The Court then evaluated the Wallaces' request for $3,000.00 in punitive damages, highlighting two separate willful violations and an egregious discovery regarding the defendants' attorney. *Id*. The Court noted that Bankruptcy Courts have the inherent power to award punitive damages for contemptuous discharge violations. *Id*. In the Southern District of Texas, this requires the debtor to demonstrate "egregious, intentional misconduct" or "malevolent intent." The first violation found by the Court was the September 6, 2024, Demand Letter sent to the Wallaces' bankruptcy lawyer. *Id*. However, at trial, it was revealed for the first time that TBI's attorney, Thomas J. Eisweirth, blind carbon copied (Bcc'd) the Wallaces directly on that email, bypassing their counsel. *Id*. The court ordered supplemental briefing on whether this BCC action violated Texas Disciplinary Rules of Professional Conduct (TDRPC) Rule 4.02(a), prohibiting a lawyer from communicating about a case with a person they know is represented by another attorney without that attorney's consent. The court awarded

punitive damages of $500.00, concluding that attorney Eisweirth acted in bad faith and committed egregious misconduct by intentionally circumventing the Wallaces' legal counsel. *Id*. Specifically, the court first rejected Eisweirth's claim that Bcc'ing the Wallaces was ethical because their bankruptcy lawyer's representation ended at discharge. Id. The court noted that Eisweirth's own emails treated the attorney as active counsel and stated that he could "convey the demand to your clients." Second, the court noted that a series of hostile and insulting written statements Eisweirth made to opposing counsel established a bad-faith state of mind. Finally, the court ruled that using a BCC to intentionally hide direct communication with a represented party from their lawyer was a willful disregard of both the discharge injunction and professional ethical duties. *Id*. The Court found that this combination of violations met the high threshold of egregious misconduct required to justify punitive damages. *Id*.

The Court then awarded an additional $500 in punitive damages for a second willful violation, bringing the total punitive damages award to $1,000. *Id*. The Court found that on October 7, 2024, despite full knowledge of the bankruptcy discharge and having already sent an illegal Demand Letter, attorney Eisweirth filed a JAMS arbitration demand against Mr. Wallace. *Id*. The court ruled this filing was a direct, unlawful attempt to collect a discharged prepetition debt. *Id*. The action was ultimately dismissed by the arbitrator due to the discharge. The Court noted that under established bankruptcy precedent, including *In re Fauser,* 547 B.R. 907, 914 (Bankr. S.D. Tex. 2016) and *In re Mooney*, 340 B.R. 351 (Bankr. E.D. Tex. 2006), courts routinely levy punitive damages

when creditors repeatedly violate a discharge injunction through multiple communications or unwarranted legal actions. *Id*.

Finally, the Court awarded the Wallaces the full $36,458.08 requested for attorney's fees and expenses, finding the hours expended and hourly rates reasonable under the lodestar method and the *Johnson* twelve-factor test. *Id*. The total award distribution was as follows: $4,813.32 for Attorney Joel Gonzalez's time and $31,654.76 for Charles and Jane Newton's time. Attorney Eisweirth argued that Gonzalez's fees should be denied because his work focused on a § 523 extension motion rather than directly responding to the collection demands. *Id*. The court rejected this, pointing to an email where Eisweirth conditioned the threat of a § 523 filing on immediate payment (*"Should the Wallaces fail to pay my client... we will seek an exception to discharge. Do your job, Joel."*). *Id*. The court ruled that because the motion was used as coercive leverage for post-discharge collection, Gonzalez's response was necessary. *Id*. Gonzalez charges $375 per hour and has practiced consumer bankruptcy since 2007. *Id*. Charles Newton has practiced bankruptcy law since the 1990s and specializes in stay and discharge injunction litigation. *Id*. Upon reviewing the contemporaneous records, the court found the hourly rates—$440 per hour for Charles and Jane Newton, and $340 per hour for Patricia Newton—to be entirely reasonable and appropriate given their experience. *Id*.

TBI and Cook's motions for reconsideration on the Court's orders were denied. (D.E. 4-1 at 97-107).

## IV. Issues on Appeal

TBI and Cook present four issues on appeal to the District Court. (D.E. 7 pgs. 6-7). First, whether the Bankruptcy Court erred in holding TBI and Cook in contempt. Here, TBI and Cook argue that the Bankruptcy Court did not properly apply the *Taggart* standard stating that contempt may be imposed only where there is no objectively reasonable basis for the challenged conduct. Second, whether the Bankruptcy Court erred in imposing contempt liability on Cook individually. Cook asserts that the record did not establish that Cook personally asserted or sought to collect a discharged debt in his individual capacity. Third, whether the Bankruptcy Court erred in granting partial summary judgment on liability where there were genuine disputes of material fact on the record. Fourth, whether the Bankruptcy Court erred in awarding compensatory damages, punitive damages, and attorneys' fees. (D.E. 7).

The Wallaces respond contending that the Bankruptcy Court applied the correct objective reasonableness standard under *Taggart* when it made its contempt ruling. (D.E. 11 at 21). Specifically, they argue that, unlike the *In re Nielsen* case that Appellants cite, TBI and Cook had constructive or actual notice of the Wallaces' bankruptcy case and the Wallaces' case was converted into an asset case with a bar date to file a proof of claim. *Id*. *White v. Nielsen (In re Nielsen*, 383 F.3d 922 (9th Cir. 2004). The Wallaces further argue that neither TBI nor Cook answered the Amended Complaint in the adversary proceeding, therefore admitting the allegations contained therein pursuant to Federal Rule of Civil Procedure 8(b)(6). (*Id*. at 21-26). The Wallaces submit that they met their

burden to show there was no genuine dispute of material fact which allowed the court to grant the motion for summary judgment on the issue of liability. (*Id*. at 26). Specifically, because no answer was filed, the allegations in the Amended Complaint were deemed admitted. Also, neither TBI nor Cook appeared to testify before the Bankruptcy Court and did not present any evidence. *Id*. The Wallaces further respond that the judgment against Cook was proper because the evidence showed that Cook attempted to collect from them personally. (*Id*. at 27). They again argue that the facts in the Amended Complaint were undisputed and show Cook's personal involvement through his attorney, which was the basis of the court's analysis. *Id*. Finally, the Wallaces contend that the damages assessed by the Bankruptcy Court were appropriate based on the evidence submitted. (Id. at 29). In support of the punitive damages award, they noted the court's determination that Eisweirth's conduct constituted "egregious misconduct" in violating both the discharge injunction and the professional ethical duties of attorneys in not contacting represented persons and that clients may be held accountable for their attorney's conduct. *Id*.

## V. Discussion

At the conclusion of a Chapter 7 bankruptcy proceeding, a Bankruptcy Court typically enters an order under Section 727(b) "discharg[ing] the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b); see *Taggart*, 587 U.S. at 557–58. Section 524(a)(2) provides that the "discharge order 'operates as an injunction' that bars creditors from collecting any debt that has been discharged."

*Taggart*, 587 U.S. at 558 (quoting 11 U.S.C. § 524(a)(2)). Several categories of pre-petition debts are exempt from this discharge. See 11 U.S.C. § 523(a)(1)–(19); *Taggart*, 587 U.S. at 558. Exemptions for pre-petition debts arising from fraud, false pretenses, or willful injury—set out at Sections 523(a)(2), (a)(4), and (a)(6)—must be invoked by the creditor via a dischargeability determination proceeding filed within the sixty-day period established by Federal Rule of Bankruptcy Procedure 4007(c). *See* 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c). If the creditor does not file a dischargeability complaint within the prescribed time, the debts will be discharged. *See* 11 U.S.C. § 523(c)(1).

The timeline changes somewhat if such a debt is not properly listed on a debtor's bankruptcy petition schedules. *See id.* § 523(a)(3). If it is not properly listed, a debt arising from fraud, false pretenses, or willful injury is not discharged until the creditor has an opportunity to seek a dischargeability determination, unless the creditor had "notice or actual knowledge" of the bankruptcy petition. *See id.* § 523(a)(3)(B).

Section 105(a), which authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out" other bankruptcy provisions, 11 U.S.C. § 105(a), empowers Bankruptcy Courts to hold creditors who violate Section 524(a)(2)'s injunction in civil contempt, *Taggart*, 587 U.S. at 560. In *Taggart*, the Supreme Court clarified the standard that applies when determining whether a party may be held in civil contempt for a violation of the discharge injunction. "The Court determined that a Bankruptcy Court may hold a party in civil contempt for violating the discharge injunction 'if there is no fair ground of doubt as to whether the order barred the [party's]

conduct.' " *In re Windstream Holdings, Inc.*, 105 F.4th 488, 495 (2d Cir. 2024) (quoting *Taggart*, 587 U.S. at 557). "The *Taggart* standard of 'no fair ground of doubt' is satisfied 'when there is no objectively reasonable basis for concluding that the [party's] conduct might be lawful under the discharge order.' " *Id.* (quoting *Taggart*, 587 U.S. at 560). The standard is "generally an objective one," and "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Taggart*, 587 U.S. at 561. However, "subjective intent is [not] always irrelevant": "civil contempt sanctions may be warranted when a party acts in bad faith," and "a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Id.* at 561–62.

"A Bankruptcy Court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997); 11 U.S.C. §105(a). A civil contempt order "which compensates a debtor for damages suffered as a result of a creditor's violation of the discharge injunction is both necessary and appropriate to carryout the provisions of the bankruptcy code. *Terrebonne Fuel and Lune*, 108 F.3d at 613.

### A. The Bankruptcy Court Correctly Analyzed the Case under *Taggart*

TBI and Cook appeal the Bankruptcy Court's contempt ruling finding that, under *Taggart*, they lacked an objectively reasonable basis to believe the debt they sought to recover from the Wallaces might not have been discharged. A discharge order under

Chapter 7 "discharges the debtor from all debts that arose before the date of the order for relief under this chapter," subject to enumerated exceptions. 11 U.S.C. §727(b). In continuing to pursue damages from the Wallaces in the sending of the Demand Letter and the filing of JAMS arbitration proceedings, TBI and Cook argue that they relied on the Ninth Circuit case of *White v. Nielsen*, 383 F.3d 922, for the proposition that the discharge consequences of an omitted debt depend on the nature of the debt rather than merely on whether it appeared on the schedules. (D.E. 7 pg. 21). Accordingly, TBI and Cook submit they had a reasonable basis (their position concerned a nondischargeable fraud debt) for concluding that their conduct might be lawful. TBI and Cook contend that a position can be wrong and still reasonable under *Taggart*.

Here, TBI and Cook essentially argue that their subjective belief that the *In re Nielsen* case permitted them to continue to pursue the Wallaces' debt because they believed that the debt fell under a fraud exception should control what the Bankruptcy Court decided. However, the Bankruptcy Court properly applied the *Taggart* standard of whether an actual "objective fair ground of doubt" was present in this case. *Taggart*, 587 U.S. at 565. The Bankruptcy Court fully analyzed TBI and Cook's argument under *In re Nielsen*, finding that their interpretation of *In re Nielsen* was incorrect and that the Fifth Circuit's guidance controlled. (D.E. 4-1 pgs. 81-82). Specifically, that a non-dischargeable debt is not automatically discharged if the debtor fails to schedule the creditor and the creditor had no notice or actual knowledge of the case in time to file a claim and request for determination of dischargeability. *Id.* The court found that Cook

and TBI received timely notice and were required to file a complaint with the Bankruptcy Court to determine any nondischargeable debt but failed to do so. As explained above, Section 523(a)(3)(B) exempts an unscheduled, pre-petition debt arising from fraud from discharge, but only if the creditor did not have "notice or actual knowledge of the case in time" to file an action for a discharge determination under Section 523(c)(1). 11 U.S.C. section 523(a)(3)(B). After full consideration of TBI and Cook's arguments, the Bankruptcy Court found there was no fair ground of doubt that TBI's actions violated the discharge injunction. *Id*. Therefore, the Bankruptcy Court did utilize the proper standard under *Taggart* in deciding the contempt issue. The Bankruptcy Court did not apply a subjective standard. It determined whether a fair ground of doubt existed as to the lawfulness of TBI and Cook's conduct, reiterating the history of what had occurred. As the Supreme Court explained in *Taggart*, the standard of civil contempt is objective: TBI and Cook's subjective belief that they were not in violation of the discharge order provides no defense "if that belief was objectively unreasonable." 587 U.S. at 561. The undersigned finds no basis on which to conclude that the Bankruptcy Court erred.

### B. The Bankruptcy Court Did Not Abuse Its Discretion In Imposing Individual Contempt Liability Against Cook

Cook appeals the Bankruptcy Court's finding of civil contempt individually against him contending that the record did not establish Cook personally asserted or sought to collect a discharged debt. The court considered Cook's personal involvement with the debt collection efforts against the Wallaces. The court noted the Demand Letter sent to the Wallaces stated that Cook had endured "substantial financial harm and

damage," that he did not see a substantial return on his investment, that he continued to incur costs, that Cook possessed claims against the Wallaces personally, that misrepresentations were made to Cook by the Wallaces, that Cook paid $35,000 without getting any value, and that he is entitled to damages. (D.E. 4-1 at 83-84). Furthermore, in the court's order on the motion for reconsideration of the ruling, the court states "the Order makes no finding that Mr. Cook's personal liability arises out of some form of vicarious liability for any corporate acts in violation of the discharge Order. Rather, the Court found Cook independently liable based on his own conduct, that is sending the Demand Letter through Mr. Cook's counsel. Texas law does not shield an officer from liability from his own tortious acts." (D.E. 4-1 at 106). The undersigned finds no reason to believe the Bankruptcy Court abused its discretion in imposing individual contempt liability against Cook.

### C. The Bankruptcy Court Did Not Err in Granting Summary Judgment On Liability

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the evidence in the record demonstrates that there are no genuine issues of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). Where the movant bears the burden of proof at trial on the issue at hand, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); see also *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010).

TBI and Cook appeal the Bankruptcy Court's granting of the summary judgment motion, arguing that the record contained genuine disputes of material fact. First, they contend that the record contained genuine disputes regarding what the post-discharge communications and arbitration demand sought to do. They claim that these were litigation conduct between two entities (Eminent and TBI) and attempt to characterize this conduct as anything but an effort to collect a debt from the Wallaces. Next, TBI and Cook argue that there is a genuine dispute as to whether their conduct was objectively unlawful under *Taggart*. Third, Cook submits that there was a genuine dispute as to whether he could be held personally liable or whether he acted in a representative or corporate capacity for TBI.

The undersigned finds that it does not matter what the post-discharge communications and arbitration demand sought to do, as TBI and Cook submit. To support a finding of a willful violation of §524(a)(2), all the Bankruptcy Court is required to find is that the offending creditor: (1) knows the injunction has been entered, and (2) intended the actions that violate it. *In re Fauser*, 545 B.R. 907, 912 (Bankr. S.D. Tex. 2016). Here, the Bankruptcy Court found that there was no dispute that TBI and Cook knew about the discharge injunction and that they intended to send the email demanding payment and filing for arbitration through their attorney. (D.E. 4-1 80-83). Those findings were based on undisputed evidence that the Demand Letter and arbitration demand were "clearly post-discharge acts to collect on prepetition debt." (*Id*. at 80). The Bankruptcy Court went on to fully analyze the conduct under *Taggart*, finding that TBI

and Cook's subjective belief is irrelevant and that the court was bound to look at whether the violation of the discharge was objectively unreasonable. (*Id.* at 81). The Bankruptcy Court, using the *Taggart* standard and Fifth Circuit precedent, found there was no fair ground of doubt that the actions violated the discharge injunction, stating that "TBI and Cook received notice of the Wallaces' bankruptcy and the automatic stay," were required under Federal Rule of Bankruptcy Procedure 4007(c) to file a complaint to determine any nondischargeable debt within 60 days, and that they failed to do so. (*Id.* at 82).

Regarding the argument that there is a genuine dispute as to whether their conduct was objectively unlawful under *Taggart*, the Bankruptcy Court addressed this issue succinctly. The Bankruptcy Court found that TBI's reliance on the *In re Nielsen* case for the proposition that there was an objectively reasonable belief was "plainly wrong" in that the Ninth Circuit case held that a creditor is not prejudiced by a discharge due to lack of notice in a no asset case because there is nothing to distribute. *Id.*; 383 F.3d 922 (9th Cir. 2004). Noting that TBI's argument submitted a subjective reason instead of an objective one, the Bankruptcy Court found that TBI was required to file a complaint, having been given notice, seeking the Bankruptcy Court's ruling on whether the debt owed to it was dischargeable. *Id.* Lastly, regarding whether there was a genuine dispute as to whether Cook could be held personally liable or whether he acted in a representative or corporate capacity for TBI, the Bankruptcy Court found no genuine dispute of material fact after noting that the Demand Letter was "replete with allegations that Cook was harmed by the Wallaces' prepetition conduct." (*Id.* at 83). The Bankruptcy Court also

noted that Cook is liable for his attorney's actions, finding a willful violation of the discharge injunction. (*Id*. at 84).

The undersigned finds no reason to believe the Bankruptcy Court erred in finding no genuine dispute of material fact in granting the motion for partial summary judgement on the issue of liability.

**D. The Bankruptcy Court Did Not Err in Awarding Damages**

Finally, TBI and Cook appeal the Bankruptcy Court's damages award arguing that the court raised an additional issue not adjudicated in the liability ruling at the damages hearing and the award was not supported by sufficient evidence. Without citing any law, TBI and Cook submit that the court improperly considered whether Appellants' counsel acted improperly by blind-copying Appellees on an email transmitting the Demand Letter, which was not part of the summary judgment liability ruling. (D.E. 7 pgs. 31-34).

"[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." *In re Eastman*, 419 B.R. 711, 725 (Bankr.W.D.Tex.2009) (citing *Torres v. Chase Bank USA, N.A. (In re Torres*), 367 B.R. 478, 490 (Bankr.S.D.N.Y.2007)). "In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees." 420 B.R. at 663. *In re Sandburg Fin. Corp*., 446 B.R. 793, 803 (S.D. Tex.), aff'd sub nom. *In re Am. Rice, Inc*., 448 F. App'x 415 (5th Cir. 2011).

Upon reviewing the evidence, arguments, and applicable law, the undersigned concludes that the Bankruptcy Court did not abuse its discretion in awarding sanctions in the amount of $42,343.08 for Appellees. Here, there is no dispute that Appellants knew that the discharge injunction was in place and invoked at the time they sent the Demand Letter and filed for arbitration. There is also little dispute that the emails sent to the Wallaces' bankruptcy attorney show a blatant disregard for the bankruptcy proceeding and the discharge order in place. Finally, Appellants' actions were willful, as they knew the injunction had been entered and intended to take the actions at issue. That Appellants may have believed a Ninth Circuit case allowed them to pursue a potential fraudulent debt claim, or disagreed with the Bankruptcy Court's legal outcome on this issue, does not negate the willfulness finding, even if true. *In re McClure*, 420 B.R. at 663 ("That the actions are intentional—as opposed to the actual violation of the injunction being intentional—is sufficient."). The Bankruptcy Court's finding of contempt in no way constitutes an abuse of discretion, and the undersigned recommends that the Court affirm the contempt finding.

## VI. Conclusion

For the reasons stated above, the undersigned recommends that the District Court **AFFIRM** the Bankruptcy Court judgment.

Also pending are Appellees' Motion to Dismiss (D.E. 5) and Appellants' Motion for Extension of Time to File Appellants' Brief (D.E. 6). The undersigned recommends

that Appellees' Motion (D.E. 5) be **DENIED** and Appellants' Motion (D.E. 6) be **GRANTED**.

Respectfully submitted on October 5, 2026.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).